UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

QUINTIN J. MAYWEATHERS-BROWN,

    Plaintiff,

    v.

MARK SEVIER,

    Defendant.

CAUSE NO.: 3:18-CV-712-JD-MGG

OPINION AND ORDER

Quintin J. Mayweathers-Brown, a prisoner without a lawyer, filed a motion for a preliminary injunction. The Prisoner Litigation Reform Act gives authority to federal courts to allow plaintiffs to initiate actions without the prepayment of filing fees. 28 U.S.C. § 1915. That authority is constrained by Section 1915(g), commonly referred to as the "three strikes rule." *See e.g., Coleman v. Tollefson*, 135 S. Ct. 1759, 1761 (2015). A dismissal on grounds that an action is frivolous, malicious, or fails to state a claim is a strike for purposes of § 1915(g). *Id.* A prisoner who has accumulated three strikes cannot proceed without a full prepayment of the filing fee unless he can establish that he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

Mayweathers-Brown has accrued three strikes under the Prison Litigation Reform Act and cannot proceed in this case without full payment of the filing fee, unless he alleges that he is in imminent danger of serious physical injury. The court granted him leave to proceed in forma pauperis based on allegations that correctional officers used excessive force on him on July 31, 2018, an incident which he characterizes

as an "attempted murder" and as retaliation for filing a lawsuit. ECF 2. The Warden responded that an internal investigation had determined that, while correctional staff used force against Mayweathers-Brown on August 1, 2018, they used only the force necessary to control him as he became combative and resisted orders. ECF 14.

According to Mayweathers-Brown's filings (ECF 1, 5, 22), on July 31, 2018, correctional officers escorted him, handcuffed, belly chained, and ankle cuffed, to the medical unit for X-rays based on his report that he swallowed a paper clip. During this escort, he complained that a correctional officer sexually assaulted him. Once he arrived at the medical unit, he was forced to leave without undergoing X-rays. As he returned to his cell, several correctional officers appeared and assaulted him for about thirty minutes even though he was not resisting. Specifically, the correctional officers stepped on his shackles, slammed his face several times, punched and choked him, and kneed his chest, which made breathing difficult. They used racial slurs, repeatedly referred to his pending lawsuit,[1] and allowed him to have a panic attack and an asthma attack. They also used pepper spray on him and threatened that "it would be worse next time." ECF 1 at 2. According to Mayweathers-Brown, "every supervisor watched in glee as [he] feared for his life." ECF 5-2 at 2.

Mayweathers-Brown also submits a declaration from Jay Crouse (ECF 5-1), a fellow inmate, who attests that he saw Mayweathers-Brown leave his cell in a compliant manner but did not personally observe the use of force incident. He further attests that

---

[1] Specifically, Mayweathers-Brown refers to *Mayweathers-Brown v. Warden*, 3:18-cv-542 (N.D. Ind. filed July 18, 2018).

the correctional officers bragged and laughed about the incident and told Crouse that it could happen to him.

The Warden has also submitted exhibits, including investigation records, use of force reports, medical records, disciplinary records, and the use of force policy. ECF 17, 21, 24. Following Mayweathers-Brown's complaint of sexual assault, an investigation was opened under the Prison Elimination Rape Act (PREA), and those involved with the use of force incident, including Mayweathers-Brown, were interviewed. During his interview, Mayweathers-Brown represented that an unidentified officer "slapped him on the ass" as he was being escorted to the medical unit. Upon his return to his housing unit, an unidentified officer stepped on his leg shackles and pushed him to the ground. Several staff members kneed, pushed, and used pepper spray on him even though he was not resisting. Correctional staff picked him up off the ground only to slam him back on the floor and kneed his ribs to make breathing difficult. He refused a shower for decontamination and was carried to his cell.

The five correctional officers involved were interviewed for the PREA investigation and also submitted use of force reports. According to these accounts, as the officers escorted Mayweathers-Brown to the medical unit, he sporadically planted his feet and yelled that he was going to file a PREA complaint.[2] When they arrived at the medical unit, he became combative and disorderly and maneuvered himself in an attempt to separate himself from the officers. The X-ray was cancelled, and he was

---

[2] The officers represented that they observed no indication of sexual misconduct.

driven back to his housing unit. When they arrived at the garage attached to the housing unit, Mayweathers-Brown physically resisted the officers as they attempted to remove him from the van. They escorted him to a hallway, put him on the floor, and put their hands on his back to control his movement. Mayweathers-Brown kicked an officer in the chest, and, in response, the officer held Mayweathers-Brown's legs down. Mayweathers-Brown then spit on the officer, who responded by using pepper spray. Mayweathers-Brown refused to shower to decontaminate and, as he continued to resist, he was carried by his arms and legs to his cell.

During the PREA investigation, a case worker was also interviewed. The case worker stepped into the break room once he heard the noise from the altercation in the hallway. He did not see the entirety of the altercation but saw Mayweathers-Brown resisting correctional staff by pushing them away. According to the medical records (ECF 24), when Mayweathers-Brown arrived at the medical unit for X-rays, he threatened his escort team, stating that he was "taking someone down to the floor," as he swore at them and assumed an aggressive stance. The nurse called a physician to express safety concerns, and the X-rays were postponed. Following the use of force incident, a nurse examined Mayweathers-Brown at his cell. Though he complained of severe pain, the nurse observed only minor swelling and redness on Mayweathers-Brown's cheeks, forehead, right wrist, and left ankle.

The Warden challenges Mayweathers-Brown's allegation of imminent danger of physical harm. The Seventh Circuit has explained that "imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious

4

physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). "If a defendant contests a plaintiff's imminent-danger allegations . . . the court must determine the allegations' credibility, either by relying on affidavits or depositions or by holding a hearing." *Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010) (citing *Gibbs v. Roman*, 116 F.3d 83 (3rd Cir. 1997)).

After considering the record, the court finds that Mayweathers-Brown's allegation of imminent harm of physical danger is not credible. To start, the court observes that the accounts of Mayweathers-Brown and the correctional officers stand in direct conflict. Mayweathers-Brown represents that the correctional officers brutally assaulted him for thirty minutes to retaliate against him for filing a lawsuit against the Warden despite his full compliance with his orders. The correctional officers represent that Mayweathers-Brown's physically resisted them as they attempted to escort him to and from the medical unit to the point that physical force was required to control him and return him to his cell.

The record also contains accounts from individuals who were not directly involved in the altercation. The nurse at the medical unit represented that Mayweathers-Brown threatened his escort team with violence and that the X-rays were postponed as a result of this safety concern. The caseworker represented that he saw Mayweathers-Brown push the officers away in the hallway during the altercation. These third party accounts contradict Mayweathers-Brown's statement that he complied with all orders and did not resist. Additionally, the medical records indicate that Mayweathers-Brown suffered only minor injuries. These injuries are inconsistent

5

with a thirty-minute assault involving five officers and a heavily shackled inmate, which Mayweathers-Brown has described as an "attempted murder." Though Crouse's affidavit lends some support for Mayweathers-Brown's account, Crouse was not with Mayweathers-Brown at any time during the escort to and from the medical unit and did not observe the altercation.

The court also considers the allegation that the correctional staff attacked Mayweathers-Brown in retaliation for his filings in *Mayweathers-Brown v. Warden*, 3:18-cv-542 (N.D. Ind. filed July 18, 2018), a case in which he sought injunctive relief for the extreme temperatures and poor ventilation in his cell but dismissed voluntarily. Specifically, he alleges that the officers made several references to the lawsuit as they attacked him. However, it is unclear as to why correctional staff would have any interest in such an innocuous lawsuit and even more unclear as to why it would offend them to the degree that they would commit the assault described by Mayweathers-Brown.

Further, Mayweathers-Brown's framing of this allegation has suspiciously evolved during the course of litigation. In the motion for a preliminary injunction, he alleged that he merely had a "firm belief" that the attack was motivated by the ventilation lawsuit (ECF 1 at 3); however, nine days later,[3] he drafted an affidavit attesting that the correctional officers made express references to the lawsuit as they attacked him (ECF 5-2 at 2). And except for these two statements, the record contains no

---

[3] Here, the court references the dates accompanying Mayweathers-Brown's signature on these documents rather than the dates they were filed.

other references to the ventilation lawsuit, including the notes from the interview of Mayweathers-Brown during the PREA investigation. Even setting aside Mayweathers-Brown's implausible attestation that "every supervisor watched in glee as [he] feared for his life," the allegation regarding the correctional officers' retaliatory motive is not credible.

Additionally, the record contains no suggestion that any of the correctional officers involved in the altercation have attacked him or threatened him with violence since the incident occurred more than three months ago. In sum, the third-party reports, the medical records, the narrative inconsistencies, and the absence of an ongoing threat of harm severely undermine the credibility of the imminent danger allegation. Because Mayweathers-Brown's allegation of imminent danger is not credible, he can no longer proceed in forma pauperis; instead he must pay the filing fee to proceed in this case.

Finally, the motion for a preliminary injunction remains pending, and the factual basis underlying this motion and the imminent danger allegation are identical. "The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir.1998). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004).

Based on the aforementioned credibility issues, the court cannot find that Mayweathers-Brown is reasonably likely to succeed on the merits of his claim or that he will suffer irreparable harm without injunctive relief. Therefore, the motion for a preliminary injunction is denied.

For these reasons, the court:

(1) DENIES the motion for a preliminary injunction (ECF 1);

(2) ORDERS Quintin J. Mayweathers-Brown to pay the $400.00 filing fee by December 12, 2018; and

(3) CAUTIONS Quintin J. Mayweathers-Brown that, if he does not respond by that deadline, this case will be dismissed without further notice.

SO ORDERED on November 13, 2018

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT